RENDERED: MARCH 11, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1509-MR

AMY LYNN WEBB RILEY                                    APPELLANT

v.                      APPEAL FROM FAYETTE CIRCUIT COURT
               HONORABLE ERNESTO M. SCORSONE, JUDGE
                        ACTION NO. 13-CI-02932

TROY DOUGLAS RILEY                                        APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: ACREE, JONES, AND K. THOMPSON, JUDGES.

JONES, JUDGE: The Appellant, Amy Lynn Webb Riley, seeks review of the

Fayette Circuit Court's October 1, 2020 order, as amended by later order entered

October 27, 2020. Therein, the circuit court granted a motion by the Appellee,

Troy Douglas Riley, to set aside his maintenance obligation for a year due to his

unemployment and disability. On appeal, Amy maintains that the circuit court

abused its discretion in so ordering because the parties' settlement agreement,

which was incorporated by reference into their dissolution decree, explicitly provides the duration and amount of maintenance is nonmodifiable unless both parties consent in writing.[1]

Having reviewed the record and being otherwise sufficiently advised, we must agree with Amy. The parties had already agreed that Troy's maintenance obligation was not modifiable and that neither Troy's subsequent unemployment nor disability would terminate the obligation absent the written consent of both parties. *See* KRS[2] 403.180(6); *Lockhart v. Lockhart*, 566 S.W.3d 571 (Ky. App. 2018). In light of these terms, it was an abuse of discretion for the circuit court to modify Troy's maintenance. Accordingly, we reverse and remand.

## I. BACKGROUND

In July 2013, Amy filed a petition to dissolve her marriage with Troy. During the pendency of the dissolution, Amy and Troy entered into a written settlement agreement, which they signed before a notary. As it pertains to this appeal, the agreement states that since Amy had been diagnosed with Multiple

---

[1] Amy served a copy of her notice of appeal on Troy's counsel, and this Court likewise served counsel with an order setting the briefing schedule. Neither Troy nor his counsel filed an appellee brief or took any other action in this appeal prompting Amy to file a motion requesting summary reversal of the circuit court's order pursuant to CR 76.12(8)(c). Whether to penalize a party for his failure to file an appellate brief is a matter committed to our sound discretion. While we do not condone Troy's failure to file a brief, we believe the interests of justice favor a substantive review of the issues raised by Amy. Accordingly, we have denied Amy's motion by separate order.

[2] Kentucky Revised Statutes.

Sclerosis she shall receive maintenance of $500.00 per month from Troy until she dies, remarries, or becomes a permanent resident of a nursing home. As to modifications, the agreement states in relevant part:

> Both parties further understand and agree that notwithstanding any statutory or case law to the contrary it is the intent and agreement of these parties that **the amount and duration of these maintenance payments shall not be modifiable** as this was a negotiated and agreed upon condition of their settlement. Accordingly, **even if [Troy] becomes unemployed or disabled, he shall continue to pay these sums of maintenance to [Amy]** out [of] any unemployment or disability funds he may receive.
>
> . . . .
>
> Both parties agree that this document, in the event a decree of dissolution is granted by the Fayette Circuit Court, shall be incorporated by reference into said decree and **that there shall be no modification or alteration of its terms except by written document signed by both parties.**

Record (R.) at 8, 10-11 (emphasis added). Later, in August 2013, after determining that the terms of the agreement were "not unconscionable," the family court incorporated the agreement into the final decree dissolving the parties' marriage. R. at 21.

In January 2020, Troy filed a motion to terminate his maintenance obligation, alleging he had seriously injured both knees and lost his job. Troy also, for the first time, alleged that the initial family court judge was biased against him

-3-

because of Amy's employment as a clerk in the domestic violence department of the Fayette Circuit Clerk's office.[3] After Troy obtained counsel, he filed a supplemental motion which argued, in part, that the agreement should be set aside pursuant to CR 60.02 due to the existence of extraordinary circumstances. At some point prior to a ruling on his motion, Troy ceased making maintenance payments to Amy prompting her to file a motion to hold him in contempt and for attorney's fees.

The circuit court conducted an evidentiary hearing in September 2020. Shortly thereafter, in October 2020, the circuit court issued an order suspending Troy's maintenance obligations for one year. Although the circuit court was troubled that the original judge who entered the dissolution decree did not recuse given his professional relationship with Amy, it concluded that the judge's failure to recuse did not prejudice Troy because the parties negotiated the separation agreement, including the maintenance provisions, without court intervention. R. at 257. As such, the court declined to relieve Troy of his maintenance obligation solely because the prior judge had not recused.[4]

---

[3] The original family court judge had retired and the remainder of the Fayette Family Court judges recused, so the case was assigned randomly to a "regular" (*i.e.*, not family court) Fayette Circuit Court judge.

[4] We note that Troy did not proffer any credible explanation for his delay in raising the recusal issue. "A party alleging that a trial judge should recuse from [his] case must move for recusal immediately after discovering the facts upon which the disqualification rests. If the motion for recusal is not made at this time, the issue will be considered waived and the issue will not be

After correctly noting that statutory modification of the agreement was unavailable, the circuit court turned to Troy's request for relief pursuant to CR 60.02. It concluded that Troy's physical injuries had diminished his earning capacity satisfying the requirement of an "extraordinary" change in circumstances which made it "no longer equitable to enforce" the judgment. R. at 258. The court suspended Troy's maintenance obligations for one year, beginning October 1, 2020, the theory apparently being that since Troy's car payments were set to end at that time he would able to devote that money to paying maintenance. However, the court noted that it would entertain a subsequent motion to set aside the maintenance obligation once Troy's claim for disability benefits was resolved. The court denied Amy's motion for contempt, finding that it was impossible for Troy to pay $500.00 per month in maintenance.

Amy then filed a motion to alter, amend, or vacate pursuant to CR 59.05, in which she reiterated her belief that the order violated *Lockhart*, 566 S.W.3d 571 and KRS 403.180(6). She alternatively asked the court to make its order suspending Troy's maintenance obligation final and appealable. The court issued a new order which functionally was identical to the previous one, though it

considered." *Johnson v. Commonwealth*, 231 S.W.3d 800, 809 (Ky. App. 2007) (citations omitted).

added language stating "[t]his is a final and appealable Order[.]"  R. at 285.  This appeal followed.

## III.  ANALYSIS

First, we must consider whether the issues have become moot during the pendency of Amy's appeal.  The circuit court's modification order expired by its own terms in October 2021, before the Clerk of Court assigned the appeal to this panel.  A case is moot if a court's decision "cannot have any practical legal effect upon a *then* existing controversy" because appellate courts "do not render purely advisory opinions."  *Commonwealth v. Terrell*, 464 S.W.3d 495, 498-99 (Ky. 2015) (internal quotation marks and citation omitted).  Because the one-year period under which Troy's maintenance obligation has expired, the order is facially moot as it no longer has any present, ongoing impact upon Amy or Troy.  However, there are exceptions to the mootness doctrine, including one which allows appellate courts to address matters which "although moot, concern alleged injuries or violations which are capable of repetition, yet evading review."  *Id.* at 499 (internal quotation marks and citation omitted).  That exception applies when "(1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subject to the same action again."  *Id.* (internal quotation marks and citation omitted).  We conclude that this case falls within the

exception. The maintenance agreement is still in place between the parties and the circuit court has already indicated its willingness to consider further modifications should Troy request them. Accordingly, despite the fact that the present modification order has been mooted by the expiration of time, we will proceed with our review.

"This case involves the interpretation of a marital settlement agreement and the family court's statutory authority to modify that agreement. Accordingly, only issues of law are involved and our review is *de novo*." *Jaburg v. Jaburg*, 558 S.W.3d 11, 13 (Ky. App. 2018).

We begin with KRS 403.250, which provides that maintenance obligations are subject to modification due to substantially changed circumstances "[e]*xcept* as otherwise provided in subsection (6) of KRS 403.180 . . . ." (emphasis added). In turn, KRS 403.180(6) provides in relevant part that: "[e]xcept for terms concerning the support, custody, or visitation of children, *the decree may expressly preclude or limit modification of terms if the separation agreement so provides*." (emphasis added). The separation agreement in this case expressly provides that: (1) "the amount and duration of these maintenance payments shall *not* be modifiable" and (2) "even if [Troy] becomes unemployed or disabled, he shall continue to pay these sums of maintenance to [Amy.]" R. at 8 (emphasis added).

Given the unambiguous language of the parties' separation agreement, the circuit court correctly recognized that it lacked the authority to modify the agreement pursuant to KRS 403.250; however, it then utilized CR 60.02 to accomplish that same objective. This was an abuse of discretion because the parties had already agreed that neither Troy's subsequent unemployment nor disability would terminate his obligation to pay the agreed upon maintenance to Amy. The circuit court lacked the authority to modify the agreement where the parties had previously considered and agreed that neither the amount nor duration of maintenance would terminate under the circumstances relied on by the circuit court to justify CR 60.02 relief.

For example, in *Jaburg*, 558 S.W.3d 11, the parties entered into a settlement agreement which obligated one spouse to pay the other maintenance until her death or remarriage. Similar to the agreement at hand, the agreement in *Jaburg* "contained a catch-all modification or waiver clause stating that '[n]o modification or waiver of any of the terms of this Agreement shall be valid unless in writing and executed by the Parties hereto.'" *Id.* at 12. The trial court granted a motion to terminate maintenance due to the payor's looming unemployment. On appeal, we explained that the trial court could not modify an expressly non-modifiable agreement:

> Under KRS 403.180(6), the parties to a dissolution of a marriage "may expressly preclude or limit modification

of terms if the separation agreement so provides." By including such a clause in the separation agreement, "the parties may settle their affairs with a finality beyond the reach of the court's continuing equitable jurisdiction elsewhere provided." *Brown v. Brown*, 796 S.W.2d 5, 8 (Ky. 1990).

In this case, the family court found that changed circumstances under KRS 403.250(1) provide an exception to the mandate in KRS 403.180(6) that the parties may expressly preclude modification of their separation agreement. That is not the law. Changed circumstances rendering the terms of a maintenance award unconscionable is the only ground upon which a court has authority to modify any maintenance award. However, the clear language of KRS 403.250(1) prohibits a court from invoking this limited authority when the parties have a separation agreement pursuant to KRS 403.180(6) that expressly precluded subsequent modification of the terms of their separation agreement. The family court's finding it could modify the Settlement Agreement despite the presence of non-modification clauses was erroneous.

We note that a different panel of this Court interpreted KRS 403.250(1) and KRS 403.180(6) in the same way. *Lockhart v. Lockhart*, 2012-CA-000219-MR, 2013 WL 5969839, at *1 (Ky. App. Nov. 8, 2013). We emphasize what we said in that case:

> We recognize . . . "[t]he potential harm of a trial court not being able to modify a maintenance provision can lead to the financial ruination of a party." *Woodson* [*v. Woodson*], 338 S.W.3d [261,] 263 [(Ky. 2011)]. Nevertheless, we are constrained to follow the clear language of KRS 403.180(6) . . . .

*Id.* at *2.

-9-

*Id.* at 13-14.

We reached a similar result soon thereafter in *Lockhart*, 566 S.W.3d at 575-76. In that case, the parties reached a settlement agreement which required the payment of maintenance for eleven years or until the payee spouse's remarriage. Again, the agreement stated it could not be modified absent mutual consent. The trial court incorporated the agreement into the decree. Later, the payor spouse twice unsuccessfully sought to terminate maintenance due to a deterioration of his financial circumstances. On appeal, we explained why relief was unavailable:

> In the alternative, Phillip argues that KRS 403.180(6) conflicts with the rule set out in *Woodson v. Woodson*, 338 S.W.3d 261 (Ky. 2011), allowing for modification of all maintenance awards under the provisions of KRS 403.250(1). *Id.* at 263. However, this Court rejected that argument in the prior appeal. Moreover, by enacting KRS 403.180(6), our legislature permits the enforcement of a non-modifiability clause in a separation agreement. **Thus, where the statute is applicable, that rule controls over any contrary rule set out in our statutory or common law**.

*Lockhart*, 566 S.W.3d at 574 (emphasis added).

While CR 60.02 allows a circuit court to grant relief from any judgment, it is not applicable where granting that relief would be contradictory to a more specific statute. KRS 403.250 and 403.180(6), the more specific statutes, do not allow modification of Troy's maintenance obligation. As we explained in *Lockhart*, KRS 403.180(6) supersedes *any* contrary laws or decisions. This

-10-

necessarily includes relief pursuant to CR 60.02.[5] *See also Roberts v. Roberts*, 744 S.W.2d 433, 437 (Ky. App. 1988) (holding that, other than the methods listed in a separation agreement which has been incorporated into a decree, "KRS 403.250(1) provides the exclusive method" for modifying maintenance).

Like the circuit court, we are sympathetic to Troy's plight. However, the parties' separation agreement and KRS 403.180(6) preclude the relief provided by the circuit court no matter how well intentioned it may have been in these circumstances. The law is clear. The parties expressly agreed that the circumstances alleged by Troy would not provide later grounds for modification or termination of his maintenance obligation absent Amy's written consent. Amy did not give her written consent. As such, the circuit court lacked the authority to grant Troy relief, even for a year. As such, we reverse the circuit court's order relieving Troy of his maintenance obligation.

Because the circuit court concluded that Troy was entitled to relief from his maintenance obligation, it denied Amy's motion for attorney's fees and

---

[5] We are aware that in *Wilder v. Wilder*, 294 S.W.3d 449, 451 (Ky. App. 2009), we affirmed a circuit court's decision to modify a final decree pursuant to CR 60.02. However, *Wilder* is materially distinguishable. *Wilder* had nothing to do with maintenance or KRS 403.180(6). The issue in *Wilder* was whether the trial court had the authority under CR 60.02 to disturb the property allocation in a divorce decree in order to distribute a government stimulus check which was not issued until well after the decree became final. We emphasized that the check could not have been addressed in the decree since it was an unforeseeable circumstance which arose subsequent to the decree's issuance. By contrast, the settlement agreement in the case at hand specifically envisioned Troy continuing to pay maintenance if he became disabled or unemployed. In short, *Wilder* involved wholly distinguishable issues and facts.

-11-

back maintenance. On remand, Amy may renew her motion, which the circuit court shall consider in light of this Opinion and the terms of the parties' separation agreement.

## III. CONCLUSION

For the foregoing reasons, the order of the Fayette Circuit Court suspending Troy Riley's maintenance obligations to Amy Riley for one year is reversed and this case is remanded to the Fayette Circuit Court for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEF FOR APPELLANT:   NO BRIEF FOR APPELLEE.

Michael Davidson
Nam H. Nguyen
Lexington, Kentucky