RENDERED: APRIL 3, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0020-MR


JENNIFER MARIE HODGES
APPELLANT


APPEAL FROM MCCRACKEN FAMILY COURT
v.      HONORABLE BRANDI H. ROGERS, SPECIAL JUDGE
ACTION NO. 21-CI-00887


CHRISTOPHER RAY HODGES
APPELLEE


OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, L. JONES, AND TAYLOR, JUDGES.

CALDWELL, JUDGE: Jennifer Hodges appeals from the modification of maintenance and the denial of her request for attorney fees. We vacate and remand with directions to make statutorily required findings before ruling on the modification motion and to reconsider the attorney fees request accordingly.

## FACTS

In January 2023, Jennifer Hodges ("Jennifer") and Christopher Hodges ("Christopher") were divorced after more than thirty years of marriage. The divorce decree incorporated the parties' settlement agreement.

The settlement agreement provided that Christopher must pay Jennifer $1,500.00 monthly maintenance for 144 months beginning in November 2022. The agreement also stated Christopher suffered from a lung condition and: "As a result of this, the parties agree that the Petitioner's [Christopher's] maintenance obligation may be modified or terminated by this Court if his medical condition worsens in the future rendering him unable to maintain employment [at] his current capacity." (Record on Appeal, ("R"), p. 57).

In January 2024, Jennifer filed a verified motion seeking for Christopher to be held in contempt for failing to pay his full maintenance obligation. She averred Christopher made maintenance payments of only $500.00 each for October and November 2023 and failed to pay any maintenance in December 2023.

Christopher filed a motion to terminate or modify his maintenance obligation on the same day that Jennifer filed her contempt motion. Alleging his medical condition had worsened, he referred to the provision about maintenance modification in the settlement agreement.

In September 2024, the family court held a hearing on Jennifer's contempt motion and Christopher's motion to terminate or modify maintenance. Witnesses included Christopher, his treating pulmonologist, Christopher's current wife, and Jennifer.

In early October 2024, the family court issued an order finding Christopher in contempt for not paying his maintenance obligation in full. It ordered Christopher to pay Jennifer a lump sum to purge the contempt.[1] However, the court also reduced the maintenance obligation to $900.00 per month effective January 2024 (when the motion for modification was filed). The court denied Jennifer's request for attorney fees.

Jennifer filed a motion to alter, amend, or vacate. The family court denied this motion. Jennifer timely filed the instant appeal. Further facts will be set forth as needed in our analysis.

## ANALYSIS

### We Review the Family Court's Resolution of Legal Issues *De Novo*

Jennifer argues the family court misconstrued the parties' settlement agreement and erred in not resolving the motion to modify maintenance under the

---

[1] Christopher did not file a cross-appeal challenging the contempt finding or his being ordered to pay a lump sum to purge the contempt.

standard in KRS[2] 403.250.[3]  We review the family court's resolution of legal issues including interpretation of statutes and contracts *de novo*, meaning without deference.  *Money v. Money*, 297 S.W.3d 69, 71 (Ky. App. 2009); *Blackaby v. Barnes*, 614 S.W.3d 897, 900 (Ky. 2021).

## Statutory Standards Regarding Settlement Agreements and Maintenance Modification

KRS 403.180 provides in pertinent part:

(1) To promote amicable settlement of disputes between parties to a marriage attendant upon their separation or the dissolution of their marriage, the parties may enter into a written separation agreement containing provisions for maintenance of either of them, disposition of any property owned by either of them, and custody, support and visitation of their children.

(2) In a proceeding for dissolution of marriage or for legal separation, the terms of the separation agreement, except those providing for the custody, support, and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable.

. . .

(5) Terms of the agreement set forth in the decree are enforceable by all remedies available for enforcement of

---

[2] Kentucky Revised Statutes.

[3] Jennifer also argues the family court made clearly erroneous factual findings and abused its discretion in reducing maintenance.  But we do not reach these issues because we simply vacate the modification and remand for explicit consideration of KRS 403.250(1) requirements.

a judgment, including contempt, and are enforceable as contract terms.

(6) Except for terms concerning the support, custody, or visitation of children, the decree may expressly preclude or limit modification of terms if the separation agreement so provides. Otherwise, terms of a separation agreement are automatically modified by modification of the decree.

KRS 403.250 states:

(1) Except as otherwise provided in subsection (6) of KRS 403.180, the provisions of any decree respecting maintenance may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable. The provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state.

(2) Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

Jennifer points out that the family court made no findings of a substantial and continuing change of circumstances or of unconscionability in its orders modifying maintenance and denying the motion to alter, amend, or vacate. *See* KRS 403.250(1). She contends the modification order must be vacated.

Christopher disagrees. He asserts it was not necessary for the family court to make the findings called for in KRS 403.250(1). He argues:

Because the parties negotiated and entered into an agreed marital settlement agreement, pursuant to KRS

-5-

403.180(6), the trial court did not need to find there was any ongoing change in circumstances or unconscionability in order to modify the amount of maintenance. It simply needed to apply the terms and provisions of the parties' agreed marital settlement.

(Appellee brief, p. 5).

### Settlement Agreement Provisions Concerning Maintenance

The parties' marital settlement agreement states:

12. The Petitioner [Christopher] agrees to pay maintenance to the Respondent in the amount of $1500.00 per month for 144 months beginning November 2022. The Petitioner agrees to maintain a term life insurance policy with Respondent [Jennifer] as the beneficiary for the duration of the maintenance payments.

13. The parties further agree that the Petitioner's maintenance obligation shall terminate upon the death of either party, the remarriage of the Respondent, or cohabitation of the Respondent pursuant [to] *Combs v. Combs*.[4]

14. The parties further acknowledge that Petitioner suffers from a lung condition contracted as a result of his service as [a] first [responder] in New York City on September 11th, 2001. As a result of this, the parties agree that the Petitioner's maintenance obligation may be modified or terminated by this Court if his medical condition worsens in the future rendering him unable to maintain employment at his current capacity.

(R, p. 57).

---

[4] *See generally Combs v. Combs*, 787 S.W.2d 260 (Ky. 1990).

Considering these provisions (particularly Paragraph 14), the family court evidently viewed the standard in KRS 403.250(1) as not applicable. The court found the evidence showed Christopher's condition had worsened, resulting in him not being able to maintain employment at the same capacity. The court reduced the maintenance award.

The court discussed Christopher's testimony about his medical condition worsening, his taking Family and Medical Leave Act leave starting in September 2023, and his reducing his work hours to 0.6 (six-tenths) full-time beginning in January 2024. It also found Dr. Keith Kelly had been treating Christopher for about ten years and had testified to Christopher's condition worsening over the past two years.[5]

The court further found: "While Dr. Kelly has not found Christopher unable to work, Christopher's condition does affect his ability to work and supported Christopher's move to reduce his work hours." (R, p. 284.) *See also* Page 3 of order granting modification of maintenance ("maintenance modification order"), attached as Exhibit 1 to the appendix to the red appellant brief.

The family court also noted authority holding that settlement agreements are enforceable and that family courts must interpret the parties'

---

[5] The family court rendered the January 2023 divorce decree incorporating the settlement agreement less than two years before entering the maintenance modification order.

intentions based on the contract.  (Page 3 of maintenance modification order) (citing *Nelson v. Ecklar*, 588 S.W.3d 872, 878 (Ky. App. 2019)).

The family court determined that Christopher's maintenance obligation must be reduced due to evidence of his medical condition worsening and affecting his ability to work.  It did not mention the standard for modifying maintenance in KRS 403.250(1):

> In this case, the parties specifically and explicitly anticipated Christopher's medical condition worsening and affecting his ability to work.  Christopher has reduced his employment to 0.6 FTE.  His doctor supports this change.  There is no evidence Christopher is misrepresenting his medical condition or inability to maintain his employment at the capacity he was at the time the parties' [sic] entered their Agreement.  Therefore, pursuant to the explicit terms of the parties' Agreement, the Court finds Christopher's maintenance obligation should be modified consistent with the degree his employment has been modified.

(R, p. 285, page 4 of maintenance modification order).

Evidently accepting Christopher's arguments, the family court did not explicitly discuss Jennifer's argument that KRS 403.250's standard must still be met to modify maintenance.  But Jennifer's argument merits further consideration and discussion.

As Jennifer pointed out in her motion to alter, amend, or vacate as well as her appellate briefs, the settlement agreement provision about modifying maintenance does not use the term *shall.*  (In contrast, another settlement

agreement provision states maintenance **shall** be terminated upon Jennifer's remarriage or cohabitation or the death of either party.) Paragraph 14 simply states the court "may" modify maintenance if Christopher's condition worsens so that he is unable to work at the same capacity. And unlike the term *shall*, the term *may* does not refer to mandatory action.

We note the word *may* is also used in KRS 403.250(1). KRS 403.250(1) states maintenance "may" be modified "only" upon a showing of a substantial and continuing change of circumstances which renders the original obligation unconscionable. In contrast, Paragraph 14 of the parties' settlement agreement does not state that maintenance may **only** be modified if Christopher's condition worsens resulting in his being unable to work at the same capacity.

We also note the settlement agreement does not expressly state whether KRS 403.250's standard for modification must still be satisfied. *Compare Holland v. Herzfeld*, 610 S.W.3d 360 (Ky. App. 2020). In *Holland*, the parties' settlement agreement expressly "incorporated the statutory standard for modification of maintenance" in KRS 403.250. Thus, the agreement required that maintenance "may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." *Id.* at 363.

We upheld the denial of maintenance modification in *Holland* since: "The family court applied the correct standard, as mandated by the PSA [property

settlement agreement], of changed circumstances and unconscionability under KRS 403.250 in assessing whether a modification of maintenance was warranted." *Id*. at 364.

Pointing to the lack of mention of the statutory standard in the settlement agreement provision on modifying maintenance here in contrast to *Holland*, Christopher contends the family court did not err in not making explicit KRS 403.250(1) findings. He argues he is entitled to maintenance reduction under Paragraph 14 since the family court made findings of his condition worsening and his being unable to work at the same capacity as before.

On the other hand, Jennifer argues that the settlement agreement provision about maintenance modification is of no practical effect. She suggests Paragraph 14 simply notes Christopher's lung condition and indicates the court might possibly modify maintenance if the condition worsens affecting Christopher's employment capacity.

She contends Paragraph 14 does not clearly establish a different standard for modification than KRS 403.250(1). She asserts that even if Christopher's condition has worsened and he is unable to work at the same capacity, that he is not entitled to reduction of his maintenance obligation unless he can make the showings required by KRS 403.250—*i.e.*, a substantial and

continuing change of circumstances making the original maintenance award unconscionable.

Having considered both positions, Jennifer's argument is more convincing. The settlement agreement indicated it was possible the court might modify maintenance, and it did not expressly forbid modifying maintenance. *Compare Jaburg v. Jaburg*, 558 S.W.3d 11, 13–14 (Ky. App. 2018) (construing KRS 403.250 and KRS 403.180(6) together and concluding family court erred in modifying maintenance since the parties' settlement agreement expressly stated maintenance was non-modifiable).[6] But the settlement agreement does not expressly state that KRS 403.250 requirements do **not** apply.

Thus, we construe Paragraph 14 of the settlement agreement to simply reflect the possibility that the court may modify maintenance if a worsening of Christopher's medical condition and resulting reduced capacity to work leads the court to make the findings required by KRS 403.250 for modifying maintenance.

---

[6] *See also Akagi-Johnson v. Johnson*, No. 2021-CA-0342-MR, 2022 WL 569165 (Ky. App. Feb. 25, 2022) (unpublished) (hereinafter "*Akagi-Johnson*"). In *Akagi-Johnson*, we affirmed the maintenance modification upon findings of unconscionability and substantial and continuing change of circumstances as required by KRS 403.250, noting the parties' settlement agreement did not expressly preclude modification unlike the settlement agreement in *Jaburg*, 558 S.W.3d 11). 2022 WL 569165 at *3–4. Here, unlike *Akagi-Johnson*, the family court failed to make KRS 403.250(1) findings of unconscionability and substantial and continuing change of circumstances. Our unpublished opinion in *Akagi-Johnson* is not binding and citation of unpublished precedent is disfavored. Kentucky Rules of Appellate Procedure ("RAP") 41(A). However, we discuss this unpublished opinion, cited in the appellee brief argument, to distinguish *Akagi-Johnson* and explain why it does not persuade us that maintenance was properly modified without KRS 403.250(1) findings here.

-11-

Paragraph 14 does not clearly establish different requirements for modifying maintenance than KRS 403.250(1). It simply identifies one factor which the court may consider in deciding whether to modify maintenance: change in Christopher's capacity to maintain employment stemming from his medical condition worsening. But Paragraph 14 does not state that the court **must** or **shall** modify maintenance based on this type of evidence. (Nor does this provision state the court may modify maintenance based **only** on evidence of his condition worsening resulting in a change in his capacity to maintain employment.)

In the absence of a settlement agreement provision clearly stating that KRS 403.250(1) requirements do not apply or clearly imposing a different modification standard, a family court must not modify maintenance without making the findings required by KRS 403.250(1).[7] This is consistent with our

---

[7] Although not discussed in the parties' briefs, KRS 403.180(6) does not expressly provide that settlement agreements may expand the scope of maintenance modification or establish a lower standard for modification than that in KRS 403.250(1). Instead, KRS 403.180(6) provides only that: "the decree may expressly **preclude** or **limit** modification of terms if the separation agreement so provides." (Emphasis added.) *Preclude* means: "to make impossible by necessary consequence : rule out in advance." *Preclude*, MERRIAM-WEBSTER https://www.merriam-webster.com/dictionary (last visited Jan. 2, 2026).

*But see Poppe v. Poppe*, No. 2007-CA-000848-MR, 2008 WL 2779878 (Ky. App. Jul. 18, 2008) (unpublished) ("*Poppe*"). In *Poppe*, this Court stated parties can define the terms for modifying maintenance, and we rejected an argument that the parties' settlement agreement could not establish a lower standard for modifying maintenance than KRS 403.250(1). *Id.* at *2–3 (quoting *Massey v. Massey*, 220 S.W.3d 700, 703 (Ky. App. 2006)). We also held the lower court did not abuse its discretion in modifying maintenance in light of a settlement agreement provision stating the maintenance obligation was modifiable: "depending on the economic standing of the parties." *Poppe*, 2008 WL 2779878 at *1–3.

Supreme Court's recognition that strict standards for modifying maintenance apply to promote finality and stability. *See generally Mahl v. Mahl*, 671 S.W.3d 140, 148 (Ky. 2023) (citing *Woodson v. Woodson*, 338 S.W.3d 261, 263 (Ky. 2011)).

Moreover, reviewing the family court's interpretation of the settlement agreement *de novo*, we conclude the agreement did not clearly state that a different standard applied to modifying maintenance rather than KRS 403.250(1).

Paragraph 14 simply recognizes that evidence of Christopher's medical condition and any effect on his capacity to work are among the factors which a family court may consider in determining whether to modify maintenance. The settlement agreement does not explicitly state the parties agree that maintenance may be modified upon evidence of Christopher's condition worsening and his capacity to work being reduced *even if* these factors do not amount to a substantial and continuing change of circumstances rendering the original award unconscionable. Nor does it state that the maintenance obligation **must** or **shall** be reduced upon evidence of Christopher's condition worsening resulting in reduced capacity to work.

Moreover, we disagree with Christopher's argument that precedent from this Court calls for affirming the modification despite the lack of KRS 403.250(1) findings considering the settlement agreement provisions at issue here.

-13-

Christopher's brief correctly notes the original maintenance award here is an open-ended one, because it could be modified or even terminated upon circumstances including death of either party or Jennifer's remarriage. *See generally Massey*, 220 S.W.3d at 702–03. However, unlike Christopher, we do not read *Massey* to support the family court's modification of maintenance despite the lack of KRS 403.250(1) findings. The mere fact that the parties entered into a settlement agreement does not automatically mean that the requirements of KRS 403.250(1) do not apply.

In *Massey*, we did not review a ruling on a motion to modify maintenance or construe settlement agreement provisions about modifying maintenance. *Id*. at 702. Instead, we reversed the family court's original award of maintenance, because the court-imposed terms of the award violated Kentucky statutes regarding how maintenance may be modified:

> We read KRS 403.250(1) to provide that an open-ended maintenance award may be modified either upon a continuing and substantial change in circumstances making the terms unconscionable or under the provisions of KRS 403.180(6). KRS 403.180(6) provides that a decree may "expressly preclude or limit modification of terms if the separation agreement so provides." Thus, pursuant to a separation agreement, the parties may define the terms by which an open-ended maintenance award may be modified.

> To summarize, an open-ended maintenance award may be modified by only two methods: (1) agreement of the parties pursuant to a separation agreement, or (2)

changed circumstances so substantial and continuing as to make the terms of the award unconscionable. Consequently, the family court's order subjecting the award to modification only if Lisa's financial situation improved is clearly contrary to the mandates of KRS 403.250(1). The family court simply cannot impose modification terms upon an open-ended maintenance award not authorized by KRS 403.250(1). As KRS 403.250(1) sets forth two specific methods by which an open-ended maintenance award may be modified, we conclude the family court erred by subjecting Lisa's maintenance award to modification only upon improvement of Lisa's financial situation. Upon remand, we direct the family court to enter an award of maintenance consistent with our opinion.

*Id*. at 703.

In sum, because the family court imposed a limitation on modification which was not set forth in a settlement agreement and which was not consistent with KRS 403.250(1) requirements for modifying maintenance, we reversed the original maintenance award in *Massey*.

But *Massey* does not address whether a court may properly modify maintenance without making the findings required by KRS 403.250(1) when the parties' settlement agreement does not forbid modification but also does not expressly state if KRS 403.250(1) requirements apply.

While *Massey* does not squarely address what standard applies in such circumstances, other Kentucky precedent indicates that KRS 403.250 requirements

-15-

still apply to modifying maintenance in the absence of settlement agreement provisions expressly limiting or precluding maintenance under KRS 403.180(6).

For example, when settlement agreement provisions merely allude to the possibility of a court modifying maintenance without clearly establishing another standard for modifying maintenance, precedent supports a holding that one must make the showings required by KRS 403.250(1) to obtain modification.

In *Wheeler v. Wheeler*, 154 S.W.3d 291 (Ky. App. 2004), the parties' settlement agreement provided the ex-wife would receive a set amount of monthly maintenance until she died or remarried. But this agreement also stated the maintenance obligation was subject to further court orders if either party had a change of circumstances. *Id*. at 292. We noted that our unpublished opinion in a prior appeal of the same case held that because the settlement agreement stated no specific standard for determining whether there had been a change in circumstances, the standard in KRS 403.250(1) applied. *Wheeler*, 154 S.W.3d at 292.[8]

Our earlier unpublished opinion in *Wheeler* held the lower court did not err in denying the first modification motion due to the movant ex-wife's failure

---

[8] *But see Poppe*, 2008 WL 2779878 at *3 (affirming modification of maintenance, evidently without KRS 403.250(1) findings, as "Here, in contrast to the general 'change in circumstances' standard reviewed in *Wheeler*, the separation agreement permits modification only under the more clearly defined standard of 'depending on the economic standing of the parties.'").

to make KRS 403.250(1) showings. 154 S.W.3d at 292. Following this first appeal, the ex-husband filed his own motion to modify maintenance, and the lower court reduced the maintenance obligation.

In this second appeal, we determined the lower court erred in limiting its consideration of circumstances to those occurring after the initial denial of modification rather than considering all circumstances after the divorce decree. But we did not back away from our earlier holding that the lower court must make findings of unconscionability and substantial, continuing change of circumstances to modify maintenance. *Id*. at 293–94.

Similarly, here the parties' agreement did not clearly establish a different standard to apply rather than KRS 403.250(1). They simply agreed that Christopher's lung condition and any resulting effect on his ability to work "may" result in the family court modifying maintenance. And given that "reduced employment capacity" does not automatically equate to reduced earnings, this makes sense. But given the absence of clear language in the settlement agreement's permitting maintenance modification without KRS 403.250(1) findings, the family court erred in not considering whether KRS 403.250(1) requirements were fulfilled in ruling on the motion to modify.

So, we vacate the order modifying maintenance and remand for the family court to make findings about whether Christopher has made the showings required to modify maintenance pursuant to KRS 403.250.

Certainly, in determining whether the requirements for modifying maintenance in KRS 403.250 are met, the family court may consider evidence of any worsening of Christopher's medical condition since the decree and any resulting effect on his capacity to work in determining if KRS 403.250(1)'s requirements are satisfied. However, the family court may not properly modify maintenance without making findings of unconscionability and a substantial and continuing change of circumstances as required by KRS 403.250.

Next, we turn our attention to the issue of attorney fees.

**Family Court to Reconsider Attorney Fees Request As Well Upon Remand**

In addition to challenging the maintenance modification, Jennifer appeals from the denial of her request for attorney fees. She points out she sought attorney fees not only for Christopher's unilaterally reducing maintenance payments, but also due to other factors, including his admitted failure to comply with the divorce decree provision requiring him to pay her $5,000.00 within a year of the decree. (At the hearing, the parties clarified that Christopher paid that sum to Jennifer right before the hearing—which occurred over a year and a half after

-18-

entry of the divorce decree.) Jennifer also alleges that Christopher did not timely or fully respond to her discovery requests.

We recognize Jennifer's attorney fees request may be related to other factors in addition to Christopher's seeking to modify or terminate maintenance. Nonetheless, since we vacate the order modifying maintenance and remand for a determination of this issue under the standard in KRS 403.250(1), the forthcoming maintenance decision may change the parties' respective financial circumstances. *See* KRS 403.220.

Moreover, the family court may reach a different understanding of the fairness and/or merits of conduct in the modification proceeding considering our holding and may wish to reconsider the attorney fees request accordingly. *See generally Picard v. Knight*, 701 S.W.3d 467, 476 (Ky. 2024) (quoting *Gentry v. Gentry*, 798 S.W.2d 928, 938 (Ky. 1990)):

> The amount of an award of attorney's fees is committed to the sound discretion of the trial court with good reason. That court is in the best position to observe conduct and tactics which waste the court's and attorneys' time and must be given wide latitude to sanction or discourage such conduct.

Upon remand, the family court has discretion to determine anew whether Jennifer should be awarded attorney fees to sanction any wasteful conduct in these proceedings, *see id.*, and upon consideration of the parties' respective financial resources, KRS 403.220. We express no opinion on the merits of this

issue.  But first, the court must determine whether Christopher has made the necessary showings for maintenance modification pursuant to KRS 403.250(1).

Further arguments raised in the briefs which are not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we **VACATE** the modification of maintenance and **REMAND** for the family court to determine whether KRS 403.250 requirements for modifying maintenance are met and then to reconsider the attorney fees request accordingly.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Bradly A. Miller
Paducah, Kentucky

BRIEF FOR APPELLEE:

Warner T. Wheat
Paducah, Kentucky